UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KENNETH G. GILMAN, individually,
and on behalf of all other similarly situated,    Case No. 2:11-cv-00696-UA-DNF

        Plaintiff,

v.

SAMSUNG ELECTRONICS AMERICA, INC.,
and SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC.

        Defendants.

_____/

## DEFENDANT SAMSUNG TELECOMMUNICATIONS AMERICA, INC.'S MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendant, Samsung Telecommunications America, LLC ("STA"), through undersigned counsel, moves this Court for an order directing Plaintiff, Kenneth Gilman ("Plaintiff") to submit the claims alleged in his putative class action complaint ("Complaint") to arbitration pursuant to the customer service agreement between Plaintiff and his mobile telephone service provider. Alternatively, STA moves for dismissal of the claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12 (b) (6).

### BACKGROUND

Plaintiff[1] filed this putative class action against STA for (1) Breach of Express Warranties (Count I); (2) Breach of Implied Warranties (Count II) and Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count III). Plaintiff's claims allegedly

---

[1] Plaintiff describes himself as a sophisticated attorney who "has served, and currently serves as lead or co-counsel in various types of complex litigation, including cases in areas of…consumer protection." *See* Plaintiff's law firm web page biography at www.massachusettsaccidentinjurylawfirm.com/gilman-law-lip-bios/.

arise from his December 2010 purchase of a Samsung Fascinate™[2] from Verizon Wireless ("Verizon") and his subsequent disappointment with the performance of the device. Plaintiff alleges the Samsung Fascinate™ and other Samsung cell phone models suffer from design defects, manufacturing defects and defective software. *See* Complaint ("Compl."), ¶¶ 1-2. *Id.*, ¶ 28.[3]

Plaintiff alleges he notified "Samsung including *through its authorized agent, Verizon Wireless*[4]" of the defects and requested that his Samsung Fascinate™ be repaired or replaced under STA's warranty. *Id.*, ¶ 30. Plaintiff also alleges he "gave Samsung and its authorized agent", which he previously identified as Verizon, "multiple opportunities to inspect, repair or replace" his phone and that he "contact[ed] Samsung and its authorized agent," again Verizon, "on multiple occasions" seeking a remedy. *Id.*, ¶ 32.

According to Plaintiff, "Samsung and its authorized agent" failed to provide an adequate remedy for the cell phone and they concealed and denied the existence of any defects. *Id.*, ¶ 35. Further, "Samsung, including through its authorized agent" repeatedly failed to correct the defects. Id., ¶ 36. Based on these facts, Plaintiff has sued STA,[5] but curiously, not Verizon, claiming that STA refused to replace his phone and STA was unwilling to fix the defects in his Samsung Fascinate™. Plaintiff contends all of his efforts were aimed at seeking a remedy under

---

[2]  The Samsung Fascinate™ is typically referred to as a "smart phone," a mobile phone built on a mobile computing platform, with more advanced computing ability and connectivity than a cell phone.
[3]  Specifically, Plaintiff alleges that "Samsung mobile phones" suffer from the following defects:  (i) defective software; (ii) failure to effectively shut off or terminate phone calls when prompted; (iii) entering into sleep mode, silent mode or airplane mode without user input; (iv) initiation of 3-way calling without user input; (v) malfunctioning e-mail; (vi) malfunctioning voice mail and (vii) the phone freezes, crashes, or shuts down completely. Compl., ¶ 2.
[4]  All emphasis in this Motion and Supporting Memorandum of Law is supplied, unless otherwise noted.
[5]  Plaintiff originally named Samsung Electronics America, Inc. ("SEA") as a party defendant in addition to STA. (D.E. 1).  Plaintiff consented to the dismissal of SEA as that entity was improperly named as a party defendant. (D.E. 12).  The Court dismissed SEA as a defendant. (D.E. 13).

STA's express warranty. *Id.,* ¶¶ 30, 38.   Plaintiff's Complaint fails to attach any STA express warranty on which he purportedly relies for his claims.

Plaintiff's Samsung Fascinate™ was specified, tested and approved by and for Verizon. See Affidavit of Timothy Rowden,[6] ¶ 4.   The Samsung Fascinate™ was purchased by Plaintiff from Verizon.   *See* Affidavit, ¶3; *see also* Compl., ¶ 27.   Any representations made contemporaneously with the sale of the Samsung Fascinate™ were made by a Verizon agent. *See* Affidavit, ¶ 5.   Plaintiff entered a customer service agreement with Verizon in connection with his purchase of the Samsung Fascinate™ from Verizon.   *Id.,* ¶ 12.   Plaintiff's complaints about the Samsung Fascinate™ were made to Verizon.   *Id.,* ¶ 6.   The records involving Plaintiff reside with Verizon.   *Id.*

STA provided a Standard Limited Warranty with Plaintiff's Samsung Fascinate™ as part of the "Product Safety and Warranty Information" booklet ("Fascinate™ Book") provided directly to a consumer with the packaging for the Samsung Fascinate™.   *See* Affidavit, ¶ 7, Exhibit A.   The Fascinate™ Book clearly and unambiguously provides, except for the Standard Limited Warranty, the purchaser takes the Samsung Fascinate™ "AS IS" and STA makes no express or implied warranty of any kind whatsoever with respect to the Samsung Fascinate™.[7] The Standard Limited Warranty covers only "defects in material and workmanship."   *See* Compl. ¶ 48; Affidavit, ¶¶ 7-8, Exhibit B.[8]

---

[6] The original Affidavit of Timothy Rowden is being filed contemporaneously with this Motion as Exhibit A.
[7] Fascinate™ Book, p. 4.
[8] Fascinate™ Book, p. 23. ([STA] warrants to the original purchaser ("Purchaser") that [STA's] phones and accessories ("Products") are free from *defects in material and workmanship* under normal use…).

The Standard Limited Warranty applies to the phone and other phone accessories.[9]  STA expressly stated that except for the obligation to repair or replace the phone or other specifically identified accessory, the purchaser takes the product "AS IS."[10]

The Standard Limited Warranty provides that STA's sole obligation during the applicable warranty period is, at STA's option, to repair or replace any defective part of the product.[11]  As a condition precedent to triggering STA's obligation, the:

> Purchaser must return the Product to an authorized phone service facility in an adequate container for shipping, accompanied by the Purchaser's sales receipt or comparable substitute proof of sale

---

[9]   Fascinate™ Book, p. 23. (Phone, Batteries, Leather Case, Holster, Other Phone Accessories).

[10]  The Standard Limited Warranty Provides in pertinent part as follows:

> **What Are the Limits on Samsung's Warranty/liability?**  EXCEPT AS SET FORTH IN THE EXPRESS WARRANTY CONTAINED HEREIN, PURCHASER TAKES THE PRODUCT "AS IS," AND SAMSUNG MAKES NO WARRANTY OR REPRESENTATION AND THERE ARE NO CONDITIONS, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, OF ANY KIND WHATSOEVER WITH RESPECT TO THE PRODUCT, INCLUDING BUT NOT LIMITED TO:
>
> •      THE MERCHANTABILITY OF THE PRODUCT OR ITS FITNESS FOR ANY PARTICULAR PURPOSE OR USE;
>
> •      WARRANTIES OF TITLE OR NON-INFRINGEMENT;
>
> •      DESIGN, CONDITION, QUALITY, OR PERFORMANCE OF THE PRODUCT;…
>
> NOTHING CONTAINED IN THE INSTRUCTION MANUAL SHALL BE CONSTRUED TO CREATE AN EXPRESS WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE PRODUCT. ….IN ADDITION, SAMSUNG SHALL NOT BE LIABLE FOR ANY DAMAGES OF ANY KIND RESULTING FROM THE PURCHASE, USE, OR MISUSE OF, OR INABILITY TO USE THE PRODUCT OR ARISING DIRECTLY FROM THE USE OR LOSS OF USE OF THE PRODUCT FROM THE BREACH OF THE EXPRESS WARRANTY, INCLUDING INCIDENTAL, SPECIAL, CONSERQUENTIAL OR SIMILAR DAMAGES, OR LOSS OF ANTICIPATED PROFITS OR BENEFITS, OR DAMAGES ARISING FROM ANY TORT (INCLUDING NEGLIGENCE OR GROSS NEGLIGENCE) OR FAULT COMMITTED BY SAMSUNG….
>
> Fascinate™ Book, p. 25 (emphasis in original).

[11] Fascinate™ Book, p. 24.  (STA "will repair or replace, at [STA]'s sole option, without charge to Purchaser, any defective component part of Product.)

showing the original date of purchase, the serial number of Product and the seller's name and address.[12]

Plaintiff's Complaint fails to allege that he complied with this condition precedent. Instead, Plaintiff alleges that he notified STA and Verizon of his complaints, which alone does not comply with the terms of the Standard Limited Warranty. Plaintiff in fact did not return his Samsung Fascinate™ to STA or an authorized phone service facility. *See* Affidavit, ¶ 10.

Plaintiff's Complaint also fails to advise the Court that the software used with the Samsung Fascinate™ was covered by an End User License Agreement for Software ("EULA").[13]   The EULA, which was agreed to by Plaintiff when he started using the software with the Samsung Fascinate™, disclaimed all warranties, express and implied, concerning the software.[14]  Similarly, the EULA contained an exclusion of incidental, consequential and other damages.[15]

Plaintiff's customer service agreement with Verizon covered the claims Plaintiff makes in his Complaint and contained an arbitration provision. *See* Affidavit, ¶ 13, Exhibit B. The pertinent parts of the Verizon customer service agreement ("CSA") provided as follows:

**WE EACH AGREE TO SETTLE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT AS PROVIDED BELOW.  THERE'S NO JUDGE OR JURY IN ARBITRATION, BUT AN ARBITRATOR CAN AWARD THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME LIMITATIONS IN THIS AGREEMENT, AS A COURT WOULD.  IF AN APPLICABLE STATUTE PROVIDES FOR AN AWARD OF ATTORNEY'S FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO EACH AGREE, TO THE FULLEST EXTENT PERMITTED BY LAW, THAT:**

**(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR QUALIFYING SMALL CLAIMS COURT CASES, ANY**

---

[12] Fascinate™ Book, p. 24.
[13] Fascinate™ Book, pp. 26-30.
[14] Fascinate™ Book, p. 27.
[15] Fascinate™ Book, p. 27.

CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, ... OR ANY PRODUCT OR SERVICE PROVIDED UNDER OR IN CONNECTION WITH THIS AGREEMENT OR SUCH A PRIOR AGREEMENT, OR ANY ADVERTISING FOR SUCH PRODUCTS OR SERVICES, WILL BE SETTLED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB").

*See* Affidavit, ¶ 13; Exhibit B to Affidavit (emphasis in original).

## MEMORANDUM OF LAW

### I.  PLAINTIFF SHOULD BE DIRECTED TO SUBMIT HIS CLAIMS TO ARBITRATION.

The arbitration agreement here is expressly governed by the Federal Arbitration Act ("FAA").    Under the FAA, when ruling on a motion to compel arbitration, the court must determine whether a valid written agreement to arbitrate and an arbitrable issue exist. *See Senti v. Sanger Works Factory, Inc.*, 2007 WL 1174076, at *5 (M.D. Fla. Apr. 18, 2007).

#### A.    Plaintiff is a "Signatory" to the Verizon CSA.

Section 2 of the FAA requires that an arbitration agreement be "written" or "in writing" but does not requires that it be signed by the parties. *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005); *see also Sanders v. Comcast Cable Holdings, LLC*, 2008 WL 150479, at *5 (M.D. Fla. Jan. 14, 2008) ("[n]o signature is needed to satisfy the [Federal Arbitration Act's] written agreement requirement."). In *Caley*, the Eleventh Circuit noted that no provision of the FAA requires that an arbitration provision be signed by either party to be enforceable. *See* 428 F.3d at 1369.

Accordingly, Florida federal courts have generally upheld, as valid and enforceable, contracts which invite acceptance by conduct rather than by signature.    For example, "shrinkwrap agreements" which invite acceptance of contract terms by opening product packaging are valid and enforceable in Florida. *See e.g., Salco Distribs., LLC v. iCode, Inc.*,

2006 WL 449156, at *2 n.5 (M.D. Fla. Feb. 22, 2006) (holding, purchaser of software product bound by terms of shrinkwrap agreement upon opening the packaging of the product, reasoning that purchaser accepted the terms by performing the acts the vendor proposed to treat as acceptance); *Microsoft Corp. v. Big Boy Dist. LLC*, 589 F. Supp. 2d 1308, 1320 (S.D. Fla. 2008) (enforcing agreement against a downstream purchaser whose association with the manufacturer included indirect contacts through another party). "Click agreements", which invite online acceptance of contract terms by clicking "I agree," also are valid and enforceable in Florida. *See e.g., Siedle v. National Ass'n of Securities Dealers, Inc.*, 248 F. Supp. 2d 1140 (M.D. Fla. 2002).

Florida federal courts have enforced arbitration agreements accepted by a customer's use of a product or services. *See e.g., Rivera v. AT&T, Corp.*, 420 F. Supp. 2d 1312, 1320 (S.D. Fla. 2006) (enforcing new customer service agreement including an arbitration provision mailed to existing customers, where service agreement provided that continued use of AT&T's services constituted agreement with the terms and conditions and the customers continued to use the services); *Krutchik v. Chase Bank, N.A.*, 531 F. Supp. 2d 1359, 1363-65 (S.D. Fla. 2008) (continued use of credit card after mailed arbitration agreement was presumptively received constituted acceptance of the arbitration agreement); *Sanders*, 2008 WL 150479, at *6 (enforcing arbitration agreement mailed with cable bills).

**B.     There is a Written Arbitration Agreement In This Case.**

As set forth above, Plaintiff purchased his Samsung Fascinate™ from a Verizon retailer in Florida, and in connection with the purchase, he agreed to the Verizon CSA.

At Page 1 of 4, the Verizon CSA provides that, "[b]y accepting this agreement, you are bound by its conditions." *See* Affidavit, Exhibit B, Pg. 1 of 4, "Your Verizon Wireless Customer Agreement" Section. That Plaintiff accepted the agreement and utilized the Verizon service and

the Samsung Fascinate™ is clear from his allegations. *See* Compl. ¶ ¶ 27 – 38. Accordingly, there is a written arbitration agreement here to which Plaintiff is bound.

### C.   The Arbitration Agreement is Enforceable under the FAA.

Arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Under the FAA, arbitration agreements are to be adhered to and enforced. *Shearson/American Express v. McMahon*, 482 U.S. 220, 226-27 (1987); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220 (1985).

Further, the FAA makes clear that the public policy of the United States favors arbitration. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). 9 U.S.C. § 2 prohibits a state from "requir[ing] a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland v. Keating*, 465 U.S. 1, 10 (1984). The federal policy favoring arbitration is accorded such importance that arbitration awards are virtually unreviewable in any court on most grounds. *See, e.g., Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993).

### D.   The Arbitration Agreement Must Be Enforced According To Its Terms.

The Verizon CSA must be enforced according to its terms. The FAA "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776, 177 L.Ed.2d 403 (2010). Thus, like other contracts, courts are required to enforce arbitration agreements according to their terms. *Id.; Stolt-Nielsen S.A. v. AnimalFeeds International, Corp.*, 130 S. Ct. 1758, 1773, 176 L.Ed.2d 605 (2010) (To resolve an agreement to arbitrate or construe an arbitration clause, courts and arbitrators must "give effect to the contractual rights and expectations of the parties."). On this Motion, the Court must look to the intent of the parties "as manifested in the contract" to determine whether the

arbitration agreement compels arbitration of Plaintiff's claims here.   *See, e.g., O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd.*, 944 So. 2d 181,185 (2006).

### E.   Plaintiff's Claims Present Arbitrable Issues.

Because public policy favors arbitration, all questions concerning the scope of the right to arbitrate are resolved in favor of arbitration.  *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("if there is doubt about that matter-- about the scope of arbitrable issues–we should resolve that doubt in favor of arbitration.");  *World Rentals and Sales LLC v. Volvo Constr. Equipment Rents, Inc.*, 517 F.3d 1240, 1245 (11th Cir. 2008).

To determine the scope of an arbitration agreement, courts look to the language of the agreement.  *World Rentals and Sales*, 517 F.3d at 1245.  "It is the intention as expressed by the language of the agreement that governs, not the after-the-fact testimony of the parties."  *Bill Heard Chevrolet, Orlando v. Wilson*, 877 So. 2d 15, 18 (Fla. 5th DCA 2004); *World Rentals and Sales*, 517 F.3d at 1245 (to determine what disputes the parties agreed to arbitrate, *begin with the arbitration clause language*).

Here, under the plain language of the arbitration agreement, Plaintiff agreed to arbitrate any controversy or claim "arising out of or relating to … any product … provided under or in connection with [the] agreement.…"  *See* Affidavit, Exhibit B.   The phrase "arising out of or relating to" in a contract has been interpreted broadly to encompass virtually all disputes between the contracting parties, including related tort claims.  *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 637 (Fla. 1999) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 7 (1984)); *see also American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996)

(characterizing phrase "arise out of or related to" as broad arbitration clause "capable of an expansive reach"); *Gregory v. Electro-Mechanical Corp.,* 83 F.3d 382, 386 (11th Cir. 1996).

The allegations of the Complaint and the claims alleged therein *all* relate to the Samsung Fascinate™ sold to Plaintiff by Verizon in connection with the CSA.   *See* Compl., ¶ ¶ 27-69. STA should be permitted to enforce the arbitration agreement and compel arbitration of the claims in this case.

**F.      STA Can Enforce the Arbitration Agreement Contained in the CSA.**

STA is a nonsignatory to the Verizon CSA.   However, nonsignatories have the right to enforce arbitration agreements against signatories under the alternative estoppel theory and/or under agency principles.   *MS Dealer Serv. Corp., v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999); *Koechli v. BP International, Inc.,* 870 So. 2d 940, 944 (Fla. 1st DCA 2004).

There are two circumstances in which a party to an arbitration agreement is estopped from refusing to arbitrate his claims against a nonsignatory to the agreement:   (1) when the signatory's claims make reference to or presume the existence of the agreement providing for arbitration, the claims "arise[ ] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate under alternative estoppel, and, (2) when the signatory raises allegations of "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract", estoppel is warranted. *MS Dealer*, 177 F.3d at 948.

The second circumstance exists where a plaintiff has made general allegations as to the nonsignatory defendant and a signatory to the agreement, and has failed to differentiate among them in the fact allegations. *See, e.g., Brown v. General Steel Domestic Sales, LLC*, 2008 WL 2128057, at *8 (C.D. Cal. May 19, 2008) (concerted misconduct sufficiently alleged to warrant

application of estoppel where allegations of misconduct by signatory and nonsignatory defendants failed to differentiate between the defendants); *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 259 F. Supp. 2d 531, 540 (N.D. Tex. 2003) (allegations as to "the defendants" claiming nonsignatory defendants conspired with signatory defendant sufficient to warrant application of estoppel).    Additionally, estoppel has been applied where the Court determined the claims against the nonsignatory could not be considered without analyzing the conduct of a signatory or its agents. *Morselife Foundation, Inc. v. Merrill Lynch Bank & Trust Company*, F.S.B., 2010 WL 2889932 (S.D. Fla. July 21, 2010).   Both circumstances are present here.

   1.   **Plaintiff should be equitably estopped from refusing to arbitrate his claims against STA.**

The application of alternative estoppel is warranted in this case.   The Complaint is *replete* with fact allegations demonstrating that Plaintiff's claims are based on his contact with Verizon as STA's "authorized agent."

Plaintiff alleges he notified STA *"through its authorized agent"* about the alleged defects in his Samsung Fascinate™. *See* Compl., ¶ 30. Plaintiff alleges he requested that STA repair or replace his Samsung Fascinate™, *"through its authorized agent." Id.*, ¶ 30. Plaintiff alleges he gave STA *"and its authorized agent"* multiple opportunities to inspect, repair, or replace his cell phone. *Id.*, ¶ 32. Plaintiff alleges that he tried to remedy his cell phone by contacting STA *"and its authorized agent"* on multiple occasions. *Id.,*¶ 34. Plaintiff alleges that he gave STA *"and its authorized agent"* every opportunity to provide him with a remedy for his Samsung Fascinate™ but "they failed to do so and concealed and denied the existence of the inherent defects." *Id.*, ¶ 35. Finally, Plaintiff alleges STA *"including through its authorized agent"* repeatedly failed to correct the alleged defects in his Samsung Fascinate™. *Id.*, ¶ 36. Notably missing from the

Complaint are *any* allegations that Plaintiff had *any* contact with STA directly.   *Id.*, ¶ ¶ 1-38.

The elephant in the room is Verizon.   Plaintiff has artfully attempted to avoid naming Verizon as a defendant and but for one express reference to Verizon, refers to STA's "authorized agent."   The question for this Court is why Plaintiff pleads his Complaint in this manner when the fact allegations which underlie *all* of Plaintiff's claims against STA are not limited to the terms of the STA Standard Limited Warranty, but rather include his interactions with Verizon, alleged representations made by Verizon and complaints made to Verizon. *See* Compl., ¶ ¶ 64-69.   Plaintiff has clearly re-alleged and incorporated into each count his allegations relating to Verizon as STA's "authorized agent." *Id.*, ¶ ¶ 46, 56, 64.

Furthermore, in the purported warranty and FDUTPA claims based on a STA Standard Limited Warranty, Plaintiff has alleged *additional* fact allegations *relating to Verizon*.   For example, in Count I (breach of express warranties), Plaintiff alleges that STA "expressly gave warranties by specific words or actions to Plaintiff and Class members, both through the issuance of its written warranty accompanying all its phones *and/or . . . sale professionals used to promote the sale and use of its mobile phones*." *See* Compl., ¶ 48. According to Plaintiff, the "expressed warranties" were "part of the basis of the bargain for Plaintiff and each Class Member (or was otherwise reasonably relied upon) when purchasing the Samsung Phones." *Id.*, ¶ 49.   As set forth above, all of the fact allegations concerning Plaintiff's efforts to get his Samsung Fascinate™ repaired and replaced are intertwined with his contact with Verizon as STA's "authorized agent."

Based on the claims as alleged by Plaintiff, estoppel is appropriate because the allegations against STA in this case cannot be considered without evaluating Verizon's alleged conduct. *See Morselife Foundation*, 2010 WL 2889932 at *4.

Plaintiff has not sufficiently distinguished between STA and Verizon in his fact allegations. Plaintiff has alleged that STA and Verizon both denied the existence of defects in the Samsung Fascinate™ and that both concealed those defects from him and the putative Class Members he represents. *See* Compl., ¶ 35. However, he has made those allegations with general allegations as to "Samsung and its authorized agent," "Samsung including through its authorized agent," and "Samsung through its authorized agent." Plaintiff has failed to allege facts which distinguish alleged acts by STA from alleged acts by Verizon. On these allegations, the Court should find that Plaintiff's pleading of the allegations in this manner render estoppel appropriate. *See Brown*, 2008 WL 2128057 at *8; *Positive Software Solutions*, 259 F. Supp. 2d at 540.

### 2. Alternatively, STA should be permitted to enforce the arbitration agreement signed by its "authorized agent."

A nonsignatory may compel a signatory to arbitrate based on agency principles. *See e.g., Garcia v. Stonehenge, Ltd.*, 1998 WL 118177, *3 (N.D. Cal. Mar 2, 1998) (a non-signatory principal has standing to enforce an arbitration clause to which his agent is bound as a signatory) (*citing Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187–88 (9th Cir. 1986)). *See also Qubty v. Nagda*, 817 So. 2d 952, 957-958 (Fla. 5th DCA 2002); *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Melamed*, 453 So. 2d 858, 860 (Fla. 4th DCA 1984).

To the extent Plaintiff alleges that Verizon was STA's "authorized agent" and his claims are based on the acts of Verizon, Plaintiff should be estopped from avoiding arbitration of his claims against STA, Verizon's "principal" under the allegations of the Complaint.

If this case survives dismissal, this litigation will undoubtedly revolve around Verizon once discovery is underway. As set forth in the Rowden Affidavit, Plaintiff's phone was specified, tested and approved by and for Verizon. *See* Affidavit, ¶ 4. The phone was purchased by Plaintiff from Verizon. *See* Affidavit, ¶ 3; *see also* Compl. ¶ 27. Any representations made

contemporaneously with the sale of the phone were made by a Verizon agent. *See* Affidavit, ¶ 5. The Verizon CSA was entered into between Plaintiff and Verizon. *See* Affidavit, ¶ 12. Plaintiff's complaints about the alleged defective phone were made to Verizon. *See* Affidavit, ¶ 6. Further, records involving Plaintiff reside with Verizon. *Id.*

Federal courts considering the application of alternative estoppel have been reluctant to allow plaintiffs to avoid arbitration by artful pleading and/or procedural maneuvers designed to avoid arbitration of claims against a non-signatory which are inextricably intertwined with the acts of a signatory. For example, in *Bradford v. Samsung Telecommunications America, LLC*, Case. No. 5:10-cv-01882 (C.D. Cal. July 27, 2011), the court refused to allow the plaintiff to circumvent his arbitration agreement with T-Mobile by negotiating the dismissal of T-Mobile from litigation involving alleged representations by T-Mobile sales representatives about STA phones.[16] The court reasoned that, notwithstanding the absence of T-Mobile from the case, T-Mobile would still be extensively involved in the litigation. *See* Exhibit B, Page 14. Specifically, the court determined,

> To the extent, for example, that Bradford bases his individual claims against Samsung on his conversations with T-Mobile representatives at a T-Mobile store, he will likely find it necessary to seek discovery from T-Mobile. The likelihood that T-Mobile will be involved in discovery will increase if a class is certified . . . Indeed, Samsung did not have direct contact with Bradford or other California purchasers when they bought the [phones at issue], and does not have customer records concerning those purchases. Rather, the records necessary to identify the class members are likely in T-Mobile's possession. Consequently, *Grigson* supports the conclusion that it is appropriate to compel Bradford to arbitrate his claims against Samsung under principles of equitable estoppel.

*Id.*, Page 14-15. In *Grigson v. Creative Artists Agency, LLC*, the Fifth Circuit refused to allow a plaintiff to avoid arbitration by suing nonsignatories on claims inextricably intertwined with the

---

[16] A true and correct copy of the Order Granting STA's Motion to Compel Arbitration in that case is attached hereto as Exhibit B.

acts of a signatory. 210 F.3d 524 (5th Cir. 2000). There, the court determined that even though the plaintiff had voluntarily dismissed its suit against the signatory and filed a separate lawsuit against nonsignatories, the two actions were essentially the same and the lawsuit against the nonsignatories would require the participation of the signatory as a third party. *Id.* at 530.

This case presents a substantially similar scenario. As set forth above, the purported claims against STA cannot be litigated without the substantial involvement of Verizon. Significantly, the claims against STA are premised upon Plaintiff's multiple contacts with Verizon sales representatives at a Verizon store and statements they made which Plaintiff now maintains for the basis for its bargain with STA. Given these facts, Plaintiff should not be permitted to make an end run around the arbitration agreement, which covers Plaintiff's claims pertaining to the Samsung Fascinate™ he purchased from a Verizon store.

For the foregoing reasons, STA respectfully requests that this Court enter an Order granting this Motion, staying this litigation, and directing Plaintiff to subject his claims to arbitration in accordance with the arbitration agreement in the Verizon CSA.

## II.     ALTERNATIVELY, THE COURT SHOULD DISMISS THE COMPLAINT.

In the event that the Court decides not to compel arbitration, the Court should dismiss the Complaint for failure to state a cause of action.

### A.     Rule 12(b)(6) Standard

When considering a Rule 12(b)(6) motion, the Court must determine whether the Complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009); *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974, n.43 (11th Cir. 2008). While the Court must accept well-pled factual allegations as true, this principle does

not apply to "legal conclusions" or "mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 555. Further, although Rule 8(a)(2) requires only "a short and plain statement of the claim," it also demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260-61 (11th Cir. 2009). Hence, the Complaint's genuine factual allegations considered in light of the applicable law "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1949-50. In deciding whether a claim is "plausible" and not "speculative," the court should apply "common sense" and "judicial experience" and should dismiss the Complaint when the "well-pleaded facts do not permit the court to infer more than the mere possibility of [liability]." *Iqbal*, 129 S. Ct. at 1950.

When a complaint refers to, and relies on, outside documents (e.g. the Standard Limited Warranty), the Court may consider the same without straying outside the pleadings. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); 5A, 5B Charles A. Wright & Arthur R. Miller, et al., FEDERAL PRACTICE & PROCEDURE, §§ 1327, 1357 (3d ed. 2004); Fed. R. Civ. P. 10(c).

When a plaintiff's allegations conflict with relied-upon documents, the documents prevail, and the allegations are considered erroneous. *See, e.g., Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). Thus, the assumption of truth does not apply to "facts which the court will take judicial notice are not true, . . . *nor to facts which appear by a record or document included in the pleadings to be unfounded.*" *Cohen v. United States*, 129 F.2d 733, 736 (8th Cir. 1942); *see also Scaturro v. Seminole Cas. Ins. Co.*, 542 F. Supp. 2d 1290, 1300 (S.D. Fla. 2008).

In a Rule 12(b)(6) inquiry, the Court should first identify and cast aside conclusory or erroneous allegations that are not entitled to the assumption of truth. *Iqbal*, 129 S. Ct. at 1949. The Court should then consider the remaining well-pled facts contained in the complaint along with other permissible factual sources (documents on which the complaint relies) to determine whether the complaint "plausibly suggest[s] an entitlement to relief." *Id.* If, accepting these facts as true, the claim fails as a matter of law, the court must dismiss the complaint. *Twombly*, 550 U.S. at 558.

### B.   Plaintiff's Shotgun Complaint Should be Dismissed

In this case, the three count Complaint "incorporates all of the above allegations" by reference into each subsequent claim for relief. *See e.g.*, Compl., ¶ 46. In other words, Plaintiff has filed a shotgun complaint. *See Ferrell v. Durbin*, 311 F. App'x 253, 259 (11th Cir. 2009) ("In shotgun style pleading, the complaint incorporates all of the general factual allegations by reference into each subsequent claim for relief."). The Eleventh Circuit "has had much to say about shotgun pleadings, none of which is favorable." *Davis v. Coca–Cola Bottling Co.*, 516 F.3d 955, 979 n.54 (11th Cir. 2008) ("[S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times."); *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.9 (11th Cir. 2002) ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay."); *Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir. 2001) ("Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice."); *Anderson v. Dist. Bd. of Trs. of Central Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996).

For this reason alone, the Court should dismiss Plaintiff's Complaint in its entirety. *See e.g.*, *Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331 (S.D. Fla. 2011) (dismissal of an

eight count complaint where Plaintiff incorporated by reference allegations for subsequent counts, including claims for breach of express warranty, implied warranty and FDUTPA).

### C.      The Warranty Claims Fail to State a Cause of Action

Plaintiff's Complaint fails to allege privity with STA, fails to allege an item covered by any warranty, fails to allege that he complied with the condition precedent for enforcing the STA Standard Limited Warranty, cannot establish breach and seeks relief that is excluded by the STA Standard Limited Warranty.   If the Court reaches the substance of Plaintiff's Complaint for breach of warranties, it should dismiss these counts.

### 1.      The express and implied warranty claims are subject to dismissal for lack of privity between Plaintiff and STA

It is a well-established rule of Florida law that warranty-based claims, either express or implied, require privity of contract between the parties.   *See, e.g., Elizabeth N. v. Riverside Group, Inc.,* 585 So. 2d 376, 378 (Fla. 1st DCA 1991) (noting the reasoning that "'[a] warranty, whether express or implied, is fundamentally a contract.   A contract cause of action requires privity'"); *Intergraph Corp. v. Stearman,* 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990) (reversing the trial court's final judgment in favor of the plaintiff and finding that "[p]rivity is required in order to recover damages from the seller of a product for breach of express or implied warranties"); *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs., Inc.,* 444 So. 2d 1068, 1072 n.4 (Fla. 3d DCA 1984) ("It is [] direct contacts which create the express and implied warranties under [Florida law]"); *Weiss v. Johansen,* 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005) ("[I]n order to recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant."); *Williams v. Bear Stearns & Co.,* 725 So. 2d 397, 400 (Fla. 5th DCA 1998) (same); *See, e.g., T.W.M. v. Am. Med. Sys., Inc.,* 886 F. Supp. 842, 844 (N.D. Fla. 1995) (dismissing express and implied warranty claims, holding "[t]he law of Florida

is that to recover for the breach of warranty, either express or implied, the plaintiff must be in privity of contract with the defendant" and "[a] plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant"); *Timmons v. Purdue Pharma Co.,* No. 8:04-CV-1479-T-26MAP, 2006 WL 263602, at *5 (M.D. Fla. Feb. 2, 2006) ("In Florida, to recover for breach of either express or implied warranties, the plaintiff must be in privity of contract with the defendant."); *Bailey v. Janssen Pharmaceutica, Inc.*, No. 06-80702-CIV-RYSKAMP/VITUNAC, 2006 WL 3665417, at *4 (S.D. Fla. Nov. 14, 2006) ("Absent privity, there can be no claim for breach of warranty, either express or implied.").[17]

In this case, Plaintiff did not purchase the Samsung Fascinate™ directly from STA. Accordingly, there is no privity between Plaintiff and STA. The Court should dismiss the claim for breach of express warranty and implied warranty on these grounds alone.

### 2. Plaintiff fails to set forth the elements for a breach of express warranty claim

The pleading requirements for a claim for breach of express warranty are:

1. Facts in respect to sale of the product or other circumstances giving rise to warranty, express or implied, identifying the type of warranties accompanying the pertinent transactions involved;

2. Reliance upon the representations by the seller or skill and judgment of the seller where the action is based upon express warranty or warranty of fitness for a particular purpose;

3. Circumstances of the injury as caused by the breach of warranty;

4. Notice of breach of warranty;

5. Injuries sustained and damages.

*Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 104 (Fla. 4th DCA 1969).

---

[17] STA acknowledges that one judge in the Southern District reached a different conclusion , holding that privity is not required for an express warranty provided directly to a consumer. *See Smith v. Wm. Wrigley Jr. Company*, 663 F. Supp. 2d 1336,1343 (S.D. Fla. 2009). However, the *Smith* court recognized that Florida courts have not abrogated the privity requirement for a claim for breach of express or implied warranty. STA believes that the privity requirement in Florida still requires dismissal of both the express and implied warranty claims in this case.

Plaintiff's Complaint fails to identify any specific express warranty that was allegedly implicated by the issues he alleged arose with his Samsung Fascinate™. STA's Standard Limited Warranty covers only "defects in material and workmanship," and not design defects or software defects. *See* Affidavit, Exhibit B at p. 23 and 28. Yet Plaintiff's Complaint is replete with general references to "defective software" and design defects. *See e.g.* Compl., ¶ ¶ 2, 22, 25 & 51.

None of the conclusory allegations of Plaintiff's Complaint constitute an "affirmation or promise" that became "part of the basis of the bargain" for the purchase of the Samsung Fascinate™. *See* Fla. Stat. Section 672.313(1)(a)[18]; *Wheeler v. Depuy Spine, Inc.*, 740 F. Supp. 2d 1332, 1335 (S.D. Fla. 2010). In *Wheeler,* the Southern District of Florida found that that a patient who brought an action for breach of express warranty failed to state a cause of action for breach of express warranty for implantable medical devices. *Id.* The *Wheeler* court explained:

> Assuming, without deciding, that this claim is not pre-empted, Plaintiff has not demonstrated a sufficient basis under Florida law for a breach of express warranty. Even if Defendant had been in direct communication with Plaintiff, instead of just through a publicly available website and widely available brochure, the statements (and photographic images) upon which Plaintiff claims to rely simply are not an "affirmation of fact or promise" which became "part of the basis of the bargain."

> *Id.*

In addition to failing to plead a specific portion of the Standard Limited Warranty that became part of the bargain, Plaintiff cannot establish reliance, which is a critical element of a breach of express warranty claim. *See Thursby v. Reynolds Metal Co.*, 466 So. 2d 245, 250 (Fla.

---

[18] Fla. Stat. Section 672.313(1)(a) provides:

(1) Express warranties by the seller are created as follows:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

1st DCA 1984); *Weimar*, 223 So. 2d at 104; *Adair v. The Island Club*, 225 So. 2d 541, 546 (Fla. 2d DCA 1969); *Hobco, Inc. v. Tallahassee Assocs.*, 807 F.2d 1529 (11th Cir. 1987).

Plaintiff received the STA Standard Limited Warranty *after* he purchased the Samsung Fascinate™ from Verizon, which means that it could not have been an inducement for him to purchase the Samsung Fascinate™. *See K/F Development & Inv. Corp. v. Williamson Crane & Dozer Corp*, 367 So. 2d 586 (3rd DCA 1979), *cert. denied*, 372 So. 2d 469 (Fla. 1979) (purchaser of warehouse who was told at closing that the warehouse had a "good ten-year roof" could not recover for breach of warranty where roof subsequently failed since the representation was made at the closing and not the time of agreement of purchase). Accordingly, the Court should dismiss the breach of express warranty claim.

### 3.       Plaintiff cannot establish a breach of warranty because he did not comply with the condition precedent of the Standard Limited Warranty

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525 (1992); *Southern Broadcast Group, LLC v. Gem Broadcasting, Inc.*, 145 F.Supp.2d 1316, 1324 (M.D.Fla.2001) (An express warranty has long been recognized as "bargained-for terms of a contractual agreement" and therefore in the nature of a contract.)

In this case, STA's Standard Limited Warranty required that Plaintiff, as a condition precedent to STA's obligation to repair or replace the Samsung Fascinate™, return the device "to an authorized phone service facility in an adequate container for shipping, accompanied by the Purchaser's sales receipt or comparable substitute proof of sale showing the original date of purchase, the serial number of Product and the seller's name and address."[19]

---

[19] Fascinate™ Book, p. 24.

Nowhere in the Complaint does Plaintiff allege that he returned the Samsung Fascinate™ in accordance with the Standard Limited Warranty.   Moreover, Plaintiff did not return his Samsung Fascinate™ to an authorized phone service facility.   *See* Affidavit, ¶ 10.   Plaintiff's failure to comply with the condition precedent relieves STA of its obligations to repair or replace the Samsung Fascinate™. *See Burns v. Winnebago Industries, Inc.*, 2012 WL 171088, *4 (M.D. Fla., January 20, 2012)(Court found that plaintiffs could not establish a claim for breach of express warranty where they did not comply with the condition precedent expressly set forth in the warranty); *See also N. Am. Van Lines v. Collyer*, 616 So. 2d 177, 179 (Fla. 5th DCA 1993) ("a party who, by his own acts, prevents performance of a contract provision cannot take advantage of his own wrong.")  Based on this fundamental principle of contract law alone, this Court should dismiss Plaintiff's claims.

In *Taliaferro v. Samsung Telecommunications America, LLC*, Case No. 3-11-CV-1119-D (N.D. Tex., January 19, 2012)[20], the court dismissed the plaintiffs' claims against STA for breach of express warranty because the plaintiffs failed to plead the contractual precondition to recovery—specifically, that plaintiffs complied with the express warranty's requirement that the phone be returned to an "authorized phone service facility." *See Taliaferro*, at pp. 16-17. Similarly, the Court should find that Plaintiff's Complaint should be dismissed because he did not return his phone to an authorized phone service facility.

### 4. Plaintiff seeks remedies from STA that are not available under the Standard Limited Warranty

Plaintiff seeks money damages from STA even though the Standard Limited Warranty limits the Plaintiff to the remedy of repair and/or replacement. Where an express warranty is furnished, damages for its breach may not extend to items specifically excepted from the

---

[20] Attached as Exhibit C.

warranty. *See Konover v. Hochman*, 439 So. 2d 994, 995 (Fla. 4th DCA 1983). The standard is whether the disclaimer is in clear and unambiguous language which clearly reflects both parties' expectations as to what items are warranted and not warranted. *See Hesson v. Walmsley Constr. Co.*, 422 So. 2d 943, 946 (Fla. 2d DCA 1982).

As set forth above, STA properly disclaimed warranties that arise from the use of the Samsung Fascinate™ and all warranties concerning the operating software. As such, the Court should enforce these disclaimers and dismiss the warranty claims. *See Belle Plaza Condo. Ass'n, Inc. v. B.C.E. Dev., Inc.*, 543 So. 2d 239, 240 (Fla. 3d DCA 1989).

### D. Count III Fails Because Florida Law Does not Recognize a Cause of Action Under FDUTPA for the Facts Alleged in Plaintiff's Complaint

#### 1. A mere breach of a warranty does not support a FDUTPA claim

To state a cause of action under FDUTPA, the plaintiff must plead the following elements: (1) a deceptive or unfair trade practice; (2) causation; and (3) actual damages. *See, e.g., POP's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 685 (S.D. Fla. 2008); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Plaintiff's FDUTPA claim is fatally flawed in a number of ways and should be dismissed.

First, a FDUTPA claim that, as here, does nothing more than allege that (a) a warranty has been breached, and (b) this breach is "unfair" and/or "deceptive," is not a viable FDUTPA claim, but instead, impermissibly duplicates a breach-of-warranty count. In other words, challenging an act only to the extent it allegedly constitutes a contractual breach does not produce an actionable FDUTPA claim. *See, e.g., Stubblefield v. Follett Higher Educ. Group, Inc.*, No. 08:10-CV-824-T-24-AEP, 2010 WL 2025996, at *3 (M.D. Fla. May 20, 2010) (dismissing FDUTPA count because the plaintiff simply pled a breach of contract that he deemed "unfair" and "deceptive," but failed to prove "a violation of a law, rule, or regulation, such that

the breach is transformed into a FDUTPA violation."); *Rebman v. Follett Higher Educ. Group, Inc.*, 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008) (substantially similar; "[Plaintiffs] challenge the act of breaching the Agreement as unfair or deceptive rather than the act giving rise to the breach. This is precisely the type of breach of contract claim that cannot be converted to a claim under FDUTPA.").

Second, the sale of an allegedly defective product alone does not constitute a violation of FDUTPA.   *See Jovine*, 795 F. Supp. 2d at 1343.

### 2.      The FDUTPA claim fails to satisfy *Twombly* and *Iqbal.*

Plaintiff's FDUTPA claim fails to satisfy *Twombly* and *Iqbal*.   Count III fails to plead how any acts or practices by STA were "unfair" or "deceptive" as those terms are defined under FDUTPA precedent and Florida Statutes section 501.203(3)(b).[21]   Instead, Plaintiff simply incorporates by reference its breach of warranties claim and then slaps a "FDUTPA" label on these averments.   Plaintiff's FDUTPA claim may be dismissed on this ground alone because, given the pertinent law, Plaintiff failed to allege non-conclusory facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1949-50.

### 3.      FDUTPA does not apply to actions taken outside of Florida

Plaintiff's purported FDUTPA claim fails as a matter of law to the extent it relies on actions taken by STA outside of the state of Florida:

> FDUTPA *applies only to action that occurred within the state of Florida. . . .* [The] purpose of FDUTPA is to prohibit unfair and deceptive practices which have transpired within the territorial

---

[21] A "deceptive" trade act or practice and an "unfair" trade act or practice are two independent legal theories and constitute legal terms of art. "Deception" occurs within the meaning of FDUTPA where there is "a material representation or omission that is likely to mislead consumers acting reasonably under the circumstances." *In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F. Supp. 2d 1265, 1281 (S.D. Fla. 2010) (internal quotation marks omitted), aff'd, 439 Fed. App'x 849 (11th Cir. 2011).   By contrast, an "unfair" practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 715 F. Supp. 2d  at 1277 (internal quotation marks omitted).

> boundaries of the state of Florida.[] *Consequently, Plaintiffs claim that Defendants violated FDUTPA must be based entirely on actions that occurred within Florida.*

*Carnival Corp. v. Rolls-Royce PLC*, No. 08-23318-CIV, 2009 WL 3861450, at *6 (S.D. Fla. Nov. 17, 2009) (internal citations omitted) (dismissing in part FDUTPA claim to the extent it was premised on actions that occurred outside Florida).

Here, Plaintiff's Complaint fails to allege with any specificity the actions taken by STA in Florida that would be the subject of a FDUTPA claim. In fact, Plaintiff's Complaint seeks to certify a nationwide class of "all persons who purchased a new Samsung Phone..." *See* Compl., ¶ 39.

## III.   CONCLUSION

For the foregoing reasons, the Court should compel the Plaintiff to arbitrate his claims in accordance with the Verizon customer service agreement or alternatively dismiss the Complaint.

Respectfully submitted,

/s/ David E. Cannella
David E. Cannella
Florida Bar No. 983837
D. Matthew Allen
Florida Bar No. 866326
April Y. Walker
Florida Bar No. 0125288
Carlton Fields, P.A.
CNL Center at City Commons
450 S. Orange Avenue, Suite 500
Orlando, FL 32801-3336
Telephone: (407) 244-8235
Facsimile: (407) 648-9099
E-mail: DCannella@CarltonFields.com
Attorneys for Defendant Samsung
Telecommunications America, LLC.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 16th day of March 2012, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF System.


/s/ David E. Cannella